UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CLOPAY PLASTIC PRODUCTS COMPANY,      :
INC.,                                 :
                             Plaintiff,   :
                                      :
                                      :
              -v-                     :
                                      :
THE EXCELSIOR PACKAGING GROUP, INC.,  :
                             Defendant,   :
                                      :
                                      :
              -v-                     :
                                      :
KIMBERLY-CLARK CORPORATION and        :
HOGLA-KIMBERLY LTD.,                  :
                         Third-Party  :
                         Defendants.  :
                                      :
-------------------------------------------------------------X

12 Civ. 5262 (JPO)

OPINION AND ORDER

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED: 12/6/13              │
└─────────────────────────────────┘
```

J. PAUL OETKEN, District Judge:

 This action arises out of a nebulous business relationship among Clopay Plastic Products

Company, Inc. ("Clopay"), The Excelsior Packaging Group, Inc. ("Excelsior"), Kimberly-Clark

Corporation ("K-C"), and Hogla-Kimberly Ltd. ("H-K"). Clopay has sued Excelsior for breach

of contract and related claims. Excelsior has impleaded K-C and H-K. Before the Court are K-

C's motion to dismiss Excelsior's third-party complaint and Clopay's motion to sever. For the

reasons that follow, both motions are denied.

I. **Background**

 A. **Factual Background**

 The following facts are taken from the allegations in Excelsior's Third-Party Complaint

(Dkt. No. 23 ("TP Compl.")) and Clopay's Complaint (Dkt. No. 1 ("Compl.")), which is

incorporated by reference. Where the allegations conflict, the Court accepts as true the

1

allegations in the third-party complaint. *See, e.g.*, *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 937 n.18 (S.D.N.Y. 1990).

### 1.    The Parties

Clopay is a Delaware corporation with its principal place of business located in Ohio. Excelsior is a New York corporation with its principal place of business located in New York. K-C is a Delaware corporation with its principal place of business located in Texas.  H-K is an Israeli joint venture controlled by K-C, with its principal place of business located in Israel. Collectively, K-C and H-K are referred to herein as "KCC."

### 2.    The Business Arrangement

Beginning in 2007, Excelsior, "at the express instance and request of KCC," placed orders with Clopay for microflex embossed plastic film laminates ("the product"), pursuant to purchase orders requiring payment by Excelsior to Clopay within 30 days of delivery.  After converting the product, Excelsior sold it to KCC.

"Pursuant to longstanding and invariable customs and practices of the trade," a "longstanding course of dealing between Clopay and KCC," and "arrangements confirmed in writing by Clopay and KCC . . . including on or about May 1, 2010 and on or about June 28, 2010," "[t]he parties at all times intended and agreed that increases in the costs of raw materials would be borne by KCC, not by [Excelsior]."  (TP Compl. ¶¶ 9-11.)  Excelsior's invoices to KCC therefore included any increased raw material costs Excelsior had been charged by Clopay.

### 3.    Excelsior's Failure to Pay Clopay

In January 2009, Excelsior began falling behind on its payments to Clopay.  Ultimately, it failed to pay invoices for January 5, 2009 through August 25, 2009 and accrued an outstanding debt of $675,629.01.  As a result, Clopay revoked Excelsior's credit privileges.

In April 2010, Clopay resumed shipments of product to Excelsior on a cash-in-advance basis. However, because the product was cut from a roll, it was impossible to precisely match the amount of product delivered with the sum advanced by Excelsior. Consequently, a small debit or credit remained on each invoice. For invoices dated April 5, 2010 through November 17, 2010, Excelsior accrued additional debt in this manner, bringing its total debt to $692,573.13.

Under the terms of the invoices, this debt is subject to a late charge of 1.5% per month on all invoices past due more than sixty days. At the time of the filing of this action, Excelsior owed $488,116.99 in interest.

### 4.      KCC's Failure to Pay Excelsior

In December 2010, Excelsior invoiced KCC for increases in raw material costs amounting to $473,584.52, which it had been charged by Clopay. KCC failed to pay these invoices.

### B.      Procedural Background

Clopay initiated this action on July 6, 2012 asserting claims for breach of contract, goods sold and delivered, accounts stated, unjust enrichment, and breach of contract for late charges, seeking damages totaling $1,180,690.12. (Compl.) Excelsior filed a motion to dismiss Clopay's unjust enrichment claim on August 21, 2012 (Dkt. No. 7), which was denied on October 29, 2012 (Dkt. No. 17). On December 7, 2012, Excelsior filed its answer and asserted counterclaims for overpayment and accounts stated, seeking damages of $248,048.09, and for breach of warranty, seeking damages of $1,000,000. (Dkt. No. 20.) Clopay filed a reply to counterclaims on December 21, 2012. (Dkt No. 22.)

Excelsior subsequently filed a third-party complaint against K-C and H-K on January 31, 2013. (TP Compl.) K-C moved to dismiss on April 15, 2013. (Dkt. No. 30.) Excelsior opposed

3

the motion to dismiss on June 3, 2013.  (Dkt No. 35. ("TP Pl.'s Opp'n").)  K-C replied on June

11, 2013.  (Dkt. No. 37.)

Clopay filed a motion to sever Excelsior's third-party complaint on July 2, 2013.  (Dkt.

Nos. 44-46.)  Excelsior filed its opposition on July 28, 2013.  (Dkt. Nos. 49, 50.)  Clopay replied

on August 12, 2013.  (Dkt. No. 51.)

## II.     Legal Standards

### A.     Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in

the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. N.Y.*

*Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  To survive a motion

to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its

face."  *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the pleaded factual content allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

court will not consider mere conclusory allegations that lack a factual basis.  *Hayden v. Paterson*,

594 F.3d 150, 160-61 (2d Cir. 2010) (internal citations omitted).

In assessing the sufficiency of the complaint, a court may consider "any written

instrument attached to it as an exhibit, materials incorporated in it by reference, and documents

that, although not incorporated by reference, are integral to the complaint."  *Sira v. Morton*, 380

F.3d 57, 67 (2d Cir. 2004) (citation omitted).  A document is "integral" to the complaint if it is

"either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing

suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec Indus.,*

*Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  "[W]hen matters outside the

pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the

additional material and decide the motion on the complaint alone, or convert the motion to one

for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present

supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quotation

marks and citation omitted).

### B.   Motion to Sever

Federal Rule of Civil Procedure 14 allows a defendant to implead a third-party defendant

where the defendant's liability is "'dependent upon the outcome of the main claim' or when the

third party is 'potentially secondarily liable' to the defendant." *Blais Const. Co., Inc. v. Hanover*

*Square Assocs.-I, LP*, 733 F. Supp. 149, 152 (N.D.N.Y. 1990) (quoting *Kenneth Leventhal & Co.*

*v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)). "The general purpose of Rule 14(a) is

to serve judicial economy, discourage inconsistent results, and limit the prejudice incurred by a

defendant by removal of the time lag between a judgment against the defendant and a judgment

over against a third-party defendant." *Id.* (citing *Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir.

1959)).

Federal Rule of Civil Procedure 21 "permits a court to add or drop parties to an action

when doing so would serve the ends of justice and further the prompt and efficient resolution of

the litigation." *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y.

1995). On a motion to sever, the court should consider whether (i) the claims arise out of the

same transaction or occurrence; (ii) the claims present some common questions of law or fact;

(iii) settlement of the claims or judicial economy would be facilitated; (iv) prejudice would be

avoided; and (v) different witnesses and documentary proof are required for the separate claims.

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001) (citation

omitted). "The decision whether to grant a severance motion is committed to the sound

5

discretion of the trial court." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) (citation omitted).

## III.   Discussion

### A.   Motion to Dismiss

To make out a claim for breach of contract, Excelsior must sufficiently allege (i) the existence of an agreement; (ii) adequate performance by Excelsior; (iii) breach by KCC; and (iv) damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted). To make out a claim that it is an intended third-party beneficiary, Excelsior must sufficiently allege (i) that a contract between Clopay and KCC exists; (ii) that the contract was intended for Excelsior's benefit; and (iii) that the benefit to Excelsior is sufficiently immediate, rather than incidental, to indicate the assumption by Clopay and KCC to compensate Excelsior if the benefit is lost. *Naughright v. Weiss*, 826 F. Supp. 2d 676, 696 (S.D.N.Y. 2011) (citation omitted).

Excelsior's third-party complaint, though hardly a model of detail, sufficiently alleges the existence of a contract between Excelsior and KCC, or alternatively, the existence of a contract between Clopay and KCC to which Excelsior is an intended third-party beneficiary. Specifically, Excelsior alleges the existence of "arrangements . . . confirmed in writing by Clopay to KCC . . . [and] reconfirmed between and among the parties at various times, including on or about May 1, 2010 and on or about June 28, 2010," under which "[t]he parties at all times intended and agreed that increases in the costs of raw materials would be borne by KCC, *not by [Excelsior]*," and did so "for the benefit of [Excelsior]." (TP Compl. ¶¶ 9, 11, 14 (emphasis

6

added).)  These allegations, taken as true and construed in Excelsior's favor, provide a

reasonable basis to infer the existence and terms of a contract and third-party beneficiary status.[1]

Any doubt on this issue is resolved by emails between the parties—including from May

1, 2010 and June 28, 2010—which Excelsior attaches as exhibits to its opposition to K-C's

motion to dismiss.  (TP Pl.'s Opp'n.)  In a February 22, 2010 email, for instance, Clopay writes

to Excelsior:

> Clopay will sell to Excelsior [product] . . . *for* K-C MEA . . . [and]
> [t]he . . . price for this product will be based on the K-C P.O. . . .
> The duration of this agreement will be reviewed periodically with
> K-C . . . .

(*Id.*, Ex. A (emphasis added); *see also id.* Ex. D (referencing a "Price Index Agreement" between

the parties); Ex. E (May 1, 2010 email including price index agreement).)  Similarly, in an email

dated June 28, 2010, Clopay writes to H-K, with Excelsior and K-C copied:

> *Pricing for this project was discussed numerous times at the*
> *beginning of this project, with several agreements being made.* . . .
> Shipments beginning in May were to be at the new price as
> determined by the resin indexing program (*a direct pass through of*
> *resin prices*). . . .
>
> Unfortunately, there were a series of mis-steps that occurred.
> While it was clearly communicated on 4/9/10 that a price change
> would into effect on May, 1, the pricing sheet with the updated
> May price was not issued to Excelsior.  This omission was
> corrected June 21, in an e-mail sent to Adam[Excelsior]/Ron
> S.[Excelsior]/Rob K.[K-C].  At this point, this series of pricing
> errors has resulted in a shortfall of sales revenue to Clopay of
> approximately $150K.
>
> As of today, shipments are being requested by Excelsior and it is
> Clopay's position that any subsequent shipments should be at the
> correct price of $.1115 per square meter. . . .  [W]e need to agree
> on making the correct on a go forward basis.  Bill Fitzpatrick

---

[1] K-C suggests that Excelsior's allegations are insufficient because they are made against
"KCC."  However, KCC is simply a placeholder, used in lieu of referencing K-C and H-K
separately in each allegation.  The Court therefore construes Excelsior's allegations against KCC
to constitute allegations against K-C and H-K individually.

[Clopay] and I have already reviewed this situation with [K-C],
and we are aligned that mistakes were made and that they should
be corrected.  Please confirm you, *representing MEA*[H-K], *agree
with and support this position.  The result of which is:
A). All future shipments will be made at the current, corrected
price of $.1115 per square meter.
B). We will work cooperatively to address the $150k shortfall
Clopay has suffered.*

(*Id.*, Ex. E. (emphases added).)  These emails plausibly suggest that K-C was a party to an

agreement with Clopay and Excelsior regarding product pricing, and that increases in raw

material costs were passed through to K-C by Excelsior such that changes in raw material pricing

required K-C's consent.

K-C contends that the Court may not rely upon these emails because they are not integral

to the third-party complaint.  Even if the emails were necessary to the Court's holding, and they

are not, K-C's argument would fail because Excelsior had knowledge of and relied upon them in

bringing suit.  *See Chambers*, 282 F.3d at 153 (citation omitted).  This is particularly clear with

respect to the May 1, 2010 and June 28, 2010 emails, which Excelsior expressly referenced as

"writing[s] . . . including on or about May 1, 2010 and on or about June 28, 2010."  (TP Compl.

¶ 11.)

In support of its argument, K-C cites the Second Circuit's decision in *Global Network

Comms., Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006), and this Court's decision in

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06 Civ. 3085 (KMW), 2007 WL 867202

(S.D.N.Y. Mar. 21, 2007).  These cases, however, are distinguishable because they involved

defendants, not plaintiffs, seeking to introduce new evidence on a motion to dismiss.  As the

Second Circuit has explained, "the problem that arises when a court reviews statements

extraneous to a complaint generally is the lack of notice to the plaintiff that they may be

considered."  *Cortec*, 949 F.2d at 48.  Moreover, "[c]onsideration of extraneous material in

judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)." *Chambers*, 282 F.3d at 154. Consequently, if a document is extraneous to the complaint, the court must either ignore it, or convert the motion to dismiss to one for summary judgment, which gives the plaintiff an opportunity to respond with its own evidence. In contrast, if a document is "integral" to the complaint, the plaintiff necessarily had "actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," and "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec*, 949 F.2d at 48. Here, the third-party plaintiff is the party offering the documents for consideration, so there is no concern of lack of notice to the plaintiff.

K-C also relies upon *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, which involved the "atypical" situation where plaintiffs, rather than defendants, introduced extrinsic evidence on a motion to dismiss. 265 F.R.D. 106, 121 (S.D.N.Y. 2010). In *Madu*, after recognizing that a plaintiff may not "shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss," the Court concluded that certain emails were not integral to the complaint where the plaintiffs merely alleged that "Defendants have frequently ratified the Agreement and acknowledged their liability thereunder, both verbally and in writing," and failed to include the term "e-mail" anywhere in the complaint. *Id.* at 122-24 (citation and quotation marks omitted). Because the defendant "did not rely on this evidence in bringing his motion to dismiss and did not submit his own extrinsic evidence . . . considering these documents in deciding the instant motion to dismiss may be prejudicial to [the defendant]." *Id.* at 124.

*Madu*, while relevant, is distinguishable from this case. Here, Excelsior has not merely alleged the general existence of ratification "verbally and in writing," but has specifically pointed

to "writings . . . including on or about May 1, 2010 and on or about June 28, 2010." And while

Excelsior does not expressly refer to these documents as "emails," this omission is not fatal

given its precise identification of the dates of such emails. Excelsior's allegations, unlike those

of the plaintiffs in *Madu*, were sufficient to place K-C on notice of the emails in drafting its

motion to dismiss, particularly since K-C was a party to those emails.

### B.    Motion to Sever

In support of its motion to sever, Clopay contends that Excelsior's third-party claim

against KCC is entirely unrelated to Clopay's claims against Excelsior, because the former arises

out of a December 2010 unpaid invoice, while the latter arise out of unpaid invoices dated

January through August 2009. However, Excelsior alleges that "[t]he amounts alleged to be due

to Clopay from [Excelsior] consist substantially of pass-through increases in raw material costs"

and that "[i]n December 2010, [Excelsior] duly invoiced KCC for *these* cost increases . . . ." (TP

Compl. ¶¶ 9, 12) (emphasis added.) These allegations can be construed to mean that Excelsior's

December 2010 invoice to KCC was related to the costs Excelsior incurred from the January

through August 2009 invoices from Clopay. Additionally, although the emails Excelsior

attaches to its third-party complaint are dated from 2010, rather than 2009, this is not

inconsistent with—and indeed supports—Excelsior's allegation that "[t]he parties *at all times*"

agreed that KCC would bear increases in raw material costs.[2] (TP Compl. ¶ 14.) Given the

possibility that Clopay and Excelsior's claims are related to the same products and costs, and that

the alleged agreement existed throughout the course of the parties' relationship, the Court

declines to sever Excelsior's third-party claim at this time. Clopay's other reasons for severance

---

[2] This is not to say that the emails are sufficient to establish that the purported agreement existed
in 2009. However, the emails are enough at this stage to support the allegation that an agreement
existed throughout the course of the parties' dealings, and that severance is therefore
inappropriate.

are insufficient to warrant severance absent discovery to determine the contours of the business relationship between the parties.

IV.     **Conclusion**

For the reasons stated above, it is hereby ordered that:

K-C's motion to dismiss is DENIED; and

Clopay's motion to sever is DENIED without prejudice to renewal at a later date if the circumstances warrant such renewal.

The Clerk of Court is directed to terminate the motions at docket numbers 29 and 43.

SO ORDERED.

Dated: New York, New York
       December 6, 2013

                                        J. PAUL OETKEN
                                        United States District Judge