```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CLOPAY PLASTIC PRODUCTS COMPANY,                            :
INC.,                                                       :
                                    Plaintiff,              :     12-CV-5262 (JPO)
                                                            :
                    -v-                                     :     OPINION AND ORDER
                                                            :
THE EXCELSIOR PACKAGING GROUP, INC.,                        :
                                    Defendant–              :
                                    Third-Party             :
                                    Plaintiff,              :
                                                            :
                    -v-                                     :
                                                            :
KIMBERLY-CLARK CORPORATION and                              :
HOGLA-KIMBERLY LTD.,                                        :
                                    Third-Party             :
                                    Defendants.             :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

This diversity action arises out of a business relationship among Clopay Plastic Products Company, Inc. ("Clopay"), The Excelsior Packaging Group, Inc. ("Excelsior"), Kimberly-Clark Corporation ("K-C"), and Hogla-Kimberly Ltd. ("H-K"). Clopay has sued Excelsior for breach of contract and related claims. Excelsior has impleaded K-C and H-K. In December 2013, the Court denied K-C's motion to dismiss Excelsior's third-party complaint and Clopay's motion to sever. Now before the Court is H-K's motion to dismiss the third-party complaint against it for lack of personal jurisdiction. For the reasons that follow, the motion is granted.

I.   Background

   A.   Factual Background

The following facts are taken from the allegations in Excelsior's third-party complaint (Dkt. No. 23 ("TP Compl.")) and Clopay's complaint (Dkt. No. 1 ("Compl.")), which is

1

incorporated by reference. Where the allegations conflict, the Court accepts as true the allegations in the third-party complaint. *See, e.g.*, *Szollosy v. Hyatt Corp.*, 208 F. Supp. 2d 205, 207 n.2 (D. Conn. 2002); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 937 n.18 (S.D.N.Y. 1990). Additionally, because a motion to dismiss for lack of personal jurisdiction requires the resolution of factual issues outside the pleadings, the Court considers other relevant submissions from the parties at this stage. *See Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 Civ. 6390 (JPO), 2013 WL 1775440, at *1 n.1 (S.D.N.Y. Apr. 25, 2013).

### 1.     The Parties

Clopay is a Delaware corporation with its principal place of business located in Ohio. Excelsior is a New York corporation with its principal place of business located in New York. K-C is a Delaware corporation with its principal place of business located in Texas. H-K is an Israeli joint venture controlled by K-C. K-C and H-K are referred to collectively herein as "KCC" where no distinction is made between the two in the third-party complaint.

### 2.     The Business Arrangement

According to the third-party complaint, Excelsior, "at the express instance and request of KCC," placed orders with Clopay for microflex embossed plastic film laminate ("the product"), pursuant to purchase orders requiring payment by Excelsior to Clopay within 30 days of delivery. After converting the product, Excelsior sold it to KCC. Excelsior used the product to imprint graphics on Huggies brand disposable diapers. (Shemesh Decl. ¶ 2.)

"Pursuant to longstanding and invariable customs and practices of the trade," a "longstanding course of dealing between Clopay and KCC," and "arrangements confirmed in writing by Clopay and KCC . . . including on or about May 1, 2010 and on or about June 28, 2010," "[t]he parties at all times intended and agreed that increases in the costs of raw materials

would be borne by KCC, not by [Excelsior]." (TP Compl. ¶¶ 9-11.) Excelsior's invoices to KCC therefore included any increased raw material costs that Excelsior had been charged by Clopay.

### 3. Excelsior's Failure to Pay Clopay

In January 2009, Excelsior began falling behind on its payments to Clopay. Ultimately, it failed to pay invoices for January 5, 2009 through August 25, 2009 and accrued an outstanding debt of $675,629.01. As a result, Clopay revoked Excelsior's credit privileges.

In April 2010, Clopay resumed shipments of product to Excelsior on a cash-in-advance basis. However, because the product was cut from a roll, it was impossible to precisely match the amount of product delivered with the sum advanced by Excelsior. Consequently, a small debit or credit remained on each invoice. For invoices dated April 5, 2010 through November 17, 2010, Excelsior accrued additional debt in this manner, bringing its total debt to $692,573.13.

Under the terms of the invoices, this debt is subject to a late charge of 1.5% per month on all invoices past due more than sixty days. At the time of the filing of this action, Excelsior owed $488,116.99 in interest.

### 4. KCC's Failure to Pay Excelsior

In December 2010, Excelsior invoiced KCC for increases in raw material costs amounting to $473,584.52, which it had been charged by Clopay. KCC failed to pay these invoices, despite the fact that it had previously been agreed that KCC would pay for any increase in raw material costs.

### 5. H-K and Its Role in the Contract with Excelsior

As noted above, H-K is an Israeli joint venture controlled by K-C. H-K's principal place of business is located in Israel. It has no offices, employees, operations, bank accounts, or

property in New York, does not transact business in New York, and is not licensed or registered to do business in New York. (Bitton Decl. ¶¶ 2-3.)

In a declaration submitted by third-party defendants, Gilad Gurevitch affirms that he was an employee of K-C with the position of Regional Procurement Leader for the Middle East, Eastern Europe and Africa Region from 2008 to 2012. While Gurevitch admits that he negotiated with Excelsior for the purchase of plastic film in 2010 and once met a representative of Excelsior in New York in relation to this transaction, he states that he represented K-C, not H-K, at this meeting, and that the 2010 discussion "did not result in any changes to the agreement already in place" between Excelsior and K-C. (Gurevitch Decl. ¶¶ 4-6.) In opposition, Excelsior has submitted the declaration of Ronnie Shemesh, the president of Excelsior, who asserts that Gurevitch initiated the supply relationship with Excelsior via e-mail in 2007, at which time Gurevitch held himself out as the "Purchasing Director" for H-K and used an email address at the domain "hogla-kimberly.co.il." According to Shemesh, Gurevitch in fact attended two meetings in New York, one in 2008 and one in 2010, to discuss the relationship with Excelsior. The 2010 meeting involved discussion, "among other things, [of] the pricing issues that are in controversy in the current litigation." (Shemesh Decl. ¶ 6.) Moreover, Gurevitch "held himself out [to Shemesh] as being authorized to negotiate and contract on behalf of Hogla." (*Id.* ¶ 7.) According to a reply declaration, Gurevitch has no recollection of a 2008 meeting, and were there one, he states it would have related to a different product than the one at issue in the 2010 dispute.

B. **Procedural Background**

Clopay initiated this action on July 6, 2012, asserting claims for breach of contract, goods sold and delivered, accounts stated, unjust enrichment, and breach of contract for late charges, seeking damages totaling $1,180,690.12. (Compl.) Excelsior filed a motion to dismiss Clopay's

4

unjust enrichment claim on August 21, 2012 (Dkt. Nos. 8-9), which was denied on October 29, 2012 (Dkt. No. 17).  On December 7, 2012, Excelsior filed its answer and asserted counterclaims for overpayment and accounts stated, seeking damages of $248,048.09, and for breach of warranty, seeking damages of $1,000,000.  (Dkt. No. 20.)  Clopay filed a reply to counterclaims on December 21, 2012.  (Dkt. No. 22.)

Excelsior subsequently filed a third-party complaint against K-C and H-K on January 31, 2013.  (TP Compl.)  K-C moved to dismiss on April 15, 2013.  (Dkt. No. 29.)  Clopay moved to sever the third-party claims from the underlying lawsuit on July 1, 2013.  (Dkt. No. 43.)  Those motions were denied on December 6, 2013.  (Dkt. No. 55.)  After several extensions of time, third-party defendant H-K filed this motion to dismiss for lack of personal jurisdiction on February 14, 2014.  (Dkt. No. 76.)

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  "[W]here, as here, a court relies on pleadings and affidavits, the complaint need only allege facts constituting a prima facie showing of personal jurisdiction." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258 (ALC), 2014 WL 1331046, at *2 (S.D.N.Y. Mar. 31, 2014) (citation and internal quotation marks omitted); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ."  *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  However, the Court will not "draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks omitted).

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is jurisdiction under the laws of the forum state, and second deciding whether the exercise of jurisdiction comports with due process. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). As to the first part of the analysis, because a "court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants," *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996), New York's statutory law applies in this case. The New York long-arm jurisdiction statute permits jurisdiction over a non-domiciliary party who, "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," and the "cause of action aris[es] from" those contacts with the forum. N.Y. C.P.L.R. 302(a). As to the second part of the jurisdictional analysis, due process "permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice"—that is, where "the defendant has sufficient minimum contacts with the forum" and "the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks omitted).

### III. Discussion

#### A. Jurisdiction Under the New York Long-Arm Statute

In the initial analysis under New York law, the Court must decide whether H-K "transacts business" in New York, and whether the business in New York gave rise to the present

suit. *See Licci*, 673 F.3d at 60. Courts analyzing New York law consider a "variety of factors" to determine whether a non-domiciliary defendant transacts business, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys*, 98 F.3d at 29. However, no factor is dispositive, and "the ultimate determination is based on the totality of the circumstances." *Id.* "The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007) (brackets and internal quotation marks omitted).

As the New York Court of Appeals has noted, CPLR 302(a)(1) is a "single act statute," and "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Inv.*, 850 N.E.2d 1140, 1142 (N.Y. 2006) (internal quotation marks omitted). But in order to be sufficient for purposes of personal jurisdiction, the party's conduct in New York cannot be unrelated to the lawsuit; rather, "there must be a 'substantial nexus' between the business and the cause of action." *Grand River Enters. Six Nations*, 425 F.3d at 166.

Even interpreting the facts in the manner most favorable to Excelsior, this Court's exercise of personal jurisdiction over H-K is not proper. Excelsior has not sufficiently asserted that H-K availed itself of the privilege of transacting business in New York based on contacts arising from the contract for the processing of plastic film laminate at issue in this suit. The

third-party complaint makes only a conclusory allegation that the Court "has personal jurisdiction over [H-K] insofar as it has transacted business in this State, and the claims asserted herein arise out of such transaction of business." (TP Compl. ¶ 4.) Nor do Excelsior's submissions in opposition to H-K's motion show that H-K has sufficient New York contacts to subject it to New York jurisdiction in this matter. In this regard, the Court considers the "totality of [the defendant's] contacts with the forum state" to determine whether the exercise of jurisdiction is proper. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). H-K's connections with New York, as revealed by Excelsior's submissions, are few and not particularly strong. Gurevitch commenced Excelsior's business relationship with the KCC entities through an e-mail in 2007, which Gurevitch sent from an address at the "hogla-kimberly.co.il" domain. However, the 2007 e-mail's subject line is "Production for KC," and in it Gurevitch discusses the possibility that Excelsior will do business for "KC" without making any mention of H-K, much less of the plastic film laminate contract at issue here. (*See* Shemesh Decl. Exh. A.) Nor do Excelsior's submissions demonstrate that the 2008 meeting between Gurevitch and Excelsior bore any relationship to the dealings that are the subject of this litigation, or that Gurevitch was representing H-K during this meeting. (*See* Shemesh Decl. Exh. B, Second Gurevitch Decl. ¶¶ 3-5.)

Next, there is insufficient evidence in the submissions to show that Gurevitch was representing H-K during the 2010 meeting with Excelsior in New York to discuss the dispute over raw material costs at issue in the third-party suit. (*See* Second Gurevitch Decl. ¶ 6.) As a general matter, Excelsior's representative states that Gurevitch "held himself out as being authorized to negotiate and contract on behalf of [H-K]" (Shemesh Decl. ¶ 7), but this does not go to the point at issue here: even if Gurevitch had this power, there is no assertion in the record

that he was acting on behalf of H-K *in this instance*, regarding the contract with Excelsior for plastic film laminate.

Additionally, even were it shown that Gurevitch did represent H-K during the 2010 meeting, this alone would not suffice to confer personal jurisdiction. The meeting entailed, at most, a negotiation regarding raw material cost overruns; the parties' submissions do not state that the meeting materially furthered or altered the relationship between the parties. "Courts have been . . . skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d. 391, 398 (S.D.N.Y. 2004); *see also Clarendon Nat'l Ins. Co. v. Lin W. Lan*, 152 F. Supp. 2d 506, 517 (S.D.N.Y. 2001) ("New York-based contractual negotiations can by themselves constitute the transaction of business in New York if they substantially advanced or were substantively important or essential to the formation of the contract so long as the negotiations relate to the same agreement that is the subject of plaintiff's lawsuit." (alterations and internal quotation marks omitted)); *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993) ("When the visit [to New York] . . . is not for the purpose of initiating or forming a relationship, but is to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction.").

The record here does not make out a *prima facie* case of jurisdiction. Excelsior has not made the requisite showing that any transaction of business by H-K in New York gave rise to this case or that Gurevitch was acting on H-K's behalf when he met with Excelsior in New York. Accordingly, Excelsior has failed to sustain its burden of demonstrating personal jurisdiction under New York's long-arm statute.

### B.     Due Process

The due process inquiry as to a defendant's minimum contacts with the forum requires consideration of "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks omitted). The first prong of the due process test—dispositive here—inquires as to whether the defendant "purposefully established 'minimum contacts' in the forum State," and thereby "avails itself of the privilege of conducting activities within" that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). This inquiry may "overlap[] significantly with" the inquiry regarding transacting business under CPLR 302(a)(1). *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007). Importantly, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State," and the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (internal quotation marks omitted). Based on the analysis conducted above regarding New York's long-arm statute, the Court cannot conclude that H-K purposefully availed itself of the "benefits of the laws of New York such that [it] may reasonably anticipate being haled into New York court." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). Excelsior has not made a *prima facie* case that the exercise of personal jurisdiction over H-K would comport with due process.

## IV. Conclusion

For the foregoing reasons, H-K's motion to dismiss for lack of personal jurisdiction is GRANTED and the third-party complaint is dismissed as to Hogla-Kimberly Ltd.

The Clerk of Court is directed to terminate the motion at docket number 76.

SO ORDERED.

Dated: New York, New York
September 11, 2014

_____
J. PAUL OETKEN
United States District Judge