UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
CLOPAY PLASTIC PRODUCTS COMPANY,       :
INC.,                                                 :
                                                      :
                              Plaintiff,              :
                                                      :
            -v-                                       :
                                                      :          12-CV-5262 (JPO)
THE EXCELSIOR PACKAGING GROUP, INC., :
                                                      :          OPINION AND ORDER
                              Defendant–              :
                              Third-Party             :
                              Plaintiff,              :
                                                      :
            -v-                                       :
                                                      :
KIMBERLY-CLARK CORPORATION,            :
                                                      :
                              Third-Party             :
                              Defendant.              :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

    Plaintiff Clopay Plastic Products Company, Inc. ("Clopay") brought this action for

breach of contract and related claims against Defendant The Excelsior Packaging Group, Inc.

("Excelsior") for failing to pay for materials used to make Huggies brand diapers.  Excelsior

impleaded the manufacturer and distributor of Huggies, Kimberly-Clark Corporation

("Kimberly-Clark"), and its affiliate, Hogla-Kimberly Ltd. ("Hogla-Kimberly"), and asserted

counterclaims for overpayment, accounts stated, and breach of warranty.  Clopay now moves for

summary judgment on its claims and Excelsior's counterclaims.  For the reasons that follow,

Clopay's motion is granted.

## I.      Background

### A.      Factual Background[1]

This dispute arises out of a business relationship involving Clopay, Excelsior, Kimberly-Clark, and Hogla-Kimberly.  Kimberly-Clark and its joint venture affiliate, Hogla-Kimberly, manufacture and distribute Huggies brand diapers.  Excelsior is a commercial printing business that imprints plastic films and laminates.  Since 2006, a portion of its business has been imprinting Microflex embossed plastic film laminate—a material used to make Huggies diapers ("the material")—with Kimberly-Clark's graphics.  Ordinarily, Kimberly-Clark and its affiliates produced the material and provided it to Excelsior, which performed imprinting and conversion and then sent it back to Kimberly-Clark for finishing, distribution, and sale.  In early 2007, however, due to a shortage of supply of material provided by Kimberly-Clark, Excelsior began ordering material from Clopay, a manufacturer of laminates and a longtime supplier for Kimberly-Clark.

Excelsior initiated each transaction by sending Clopay a purchase order specifying the amount of material desired and the location for delivery.  Clopay then sent the material to the requested location and mailed an invoice to Excelsior's headquarters in Yonkers, New York. The back of each invoice contained Clopay's terms and conditions of sale.  (*See* Dkt. No. 59 ("Minshall Decl."), Ex. 2 ("Terms and Conditions")).  In a paragraph labeled "Warranties," the Terms and Conditions provided:

> (a) Seller warrants only that the goods shipped hereunder will meet the specifications set forth on the reverse hereof. . . .  **THE WARRANTY OF THE SPECIFICATIONS OF THE GOODS IS MADE BY THE SELLER IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT**

---

[1] The following background is drawn from Clopay's and Excelsior's Rule 56.1 Statements (Dkt. Nos. 64, 68) and the other submissions made in connection with the instant motions.  The facts are undisputed unless otherwise indicated.

> **NOT LIMITED TO ANY WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR BY SAMPLE. . . .** (b) Buyer's claims under paragraph [4](a) must be made in writing and delivered to Seller within 30 days after receipt by Buyer of the first shipment of goods as to which a claim is made.  No claim will be allowed if the required notice is not received by Seller within the 30 day period.

Terms and Conditions ¶ 4.  In a paragraph labeled "Acceptance and Entire Agreement," the

Terms and Conditions further provided:

> **SELLER'S ACCEPTANCE OF BUYER'S ORDER IS EXPRESSLY MADE CONDITIONAL ON ASSENT TO THESE CONDITIONS OF SALE. . . .  IF BUYER DOES NOT ACCEPT THESE CONDITIONS BUYER MUST NOTIFY SELLER IN WRITING WITHIN FIVE DAYS OF BUYER'S RECEIPT HEREOF AND RETURN ANY GOODS RECEIVED IMMEDIATELY OR BUYER WILL BE DEEMED TO HAVE ASSENTED TO THESE CONDITIONS.**

(*Id.* ¶ 8.)  The terms and conditions also provided for a "1 ½% per month late charge on all

invoices past due more than 60 days."  (*Id.* ¶ 2.)

Clopay characterizes its relationship with Excelsior as rocky from the start, marked by

frequent late payments and overdue balances that at times exceeded $1 million.  Although

Clopay considered terminating the arrangement and commencing litigation in late 2008 and early

2009, it opted not to do so, especially because of its independent relationship with Kimberly-

Clark, which was in need of the material processed by Excelsior.  In late 2009, however, the first

shortage of supply of laminate material ended, and Clopay refused to sell to Excelsior until it

satisfied its outstanding balance.  At this time, Excelsior owed $675,629.01 for unpaid invoices

dated January 5 through August 25, 2009 (the "2009 invoices").

In April 2010, due to another shortage of supply of the material, Clopay began again

selling material to Excelsior, but agreed to do so only on a cash-in-advance basis.  Because it

was impossible to match the amount of material shipped with the amount of cash advanced, each

shipment resulted in a credit or debit balance that was set forth in subsequent invoices (the "2010 invoices"). As a result of these transactions, Excelsior accrued an additional balance of $16,944.12.

It is undisputed that the two sets of invoices underlying this suit have a total combined balance of $692,573.13. Excelsior's president, Ronnie Shemesh, claims that Excelsior did not pay because "[s]ubstantially all of the material shipped by Clopay failed to comply with the specifications therefor and caused enormous processing delays, overtime, waste of raw materials and difficulties in imprinting, conversion[,] and manufacturing by Excelsior, including damage to Excelsior's equipment." (Dkt. No. 67 ("Shemesh Decl.") ¶ 9.) Excelsior also asserts that it did not "accept" the material, but rather "retained the same under protest" because "it would have been pointless for Excelsior to return this single-use material to Clopay, and Clopay was aware of the problems in converting the Laminate." (*See, e.g.*, Dkt. No. 68 ("Def.'s 56.1") ¶¶ 6, 7.) Shemesh states that during this time, there was "frequent and direct contact," including by e-mail, between the two companies "with regard to the defective material Clopay had shipped to Excelsior," and that "at all times [Clopay] had full knowledge of the defects." (Shemesh Decl. ¶ 10.) However, Excelsior admits that it did not make any claims with regard to this material in the manner required by the provisions of the Terms and Conditions. (*See* Def.'s 56.1 ¶ 81.)

Clopay sent Excelsior statements of account on June 30, 2011, and February 27 and June 30, 2012, which reflected the $692,573.13 due under the combined 2009 and 2010 invoices. (Minshall Decl. Ex. 7.) Excelsior received these and admits that it did not object to the statements. (Def.'s 56.1 ¶¶ 83-85.)

According to Excelsior, Clopay determined in 2010 that "it would not collect for the defective material previously shipped to Excelsior," and decided to "wr[i]te off substantially all of the receivable balance purported to be due in this action." (Shemesh Decl. ¶ 12.) Excelsior

4

also claims that Clopay "notified Excelsior in writing that Excelsior had no remaining balance due." (*Id.* ¶ 13.)  Clopay disputes these assertions.  (Dkt. No. 72 ("Second Minshall Decl.") ¶¶ 2-12.)

      **B.**    **Procedural Background**

Clopay filed this suit in July 2012, asserting claims for breach of contract, goods sold and delivered, accounts stated, unjust enrichment, and breach of contract for late charges, seeking damages totaling $1,180,690.12.  (Compl.)  Excelsior filed a motion to dismiss Clopay's unjust enrichment claim on August 21, 2012 (Dkt. Nos. 8-9), which was denied on October 29, 2012 (Dkt. No. 17).  On December 7, 2012, Excelsior filed its answer and asserted counterclaims for overpayment and accounts stated, seeking damages of $248,048.09, and for breach of warranty, seeking damages of $1,000,000.  (Dkt. No. 20.)  Clopay filed a reply to counterclaims on December 21, 2012.  (Dkt. No. 22.)  Excelsior then filed a third-party complaint against Kimberly-Clark and Hogla-Kimberly on January 31, 2013.  (TP Compl.)  Kimberly-Clark moved to dismiss on April 15, 2013 (Dkt. No. 29), and Clopay moved to sever the third-party claims from the underlying lawsuit on July 1, 2013 (Dkt. No. 43).  Those motions were denied on December 6, 2013.  (Dkt. No. 55.)  Third-party defendant Hogla-Kimberly filed a motion to dismiss for lack of personal jurisdiction on February 14, 2014 (Dkt. No. 76), and that motion was granted on September 11, 2014 (Dkt. No. 88).

Now before the Court is Clopay's motion for summary judgment, filed December 6, 2013.  (Dkt. No. 56.)  Clopay seeks judgment as a matter of law on its claims against Excelsior for payment of outstanding balances on the 2009 and 2010 invoices, along with interest.  Clopay also seeks judgment in its favor on Excelsior's counterclaims.

## II.      Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the party bearing the burden of proof at trial must come forward with evidence on each element of its claim or defense illustrating its entitlement to relief. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51. The court should view all evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

## III.     Discussion

### A.       Breach of Contract

The parties agree that New York law applies to this case. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the

plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *see also Saint Paul Commodities, LLC v. Island Biofuel, LLC*, No. 12 Civ. 3108 (DRH), 2013 WL 3874447, at *5 (E.D.N.Y. July 25, 2013).  Because the transactions here involve the sale of goods, they are governed by New York's statutory codification of the Universal Commercial Code ("UCC").  *See* N.Y. U.C.C. § 2-102.

Under UCC § 2-207, known as the "battle of the forms" provision, additional terms contained in an acceptance or written confirmation are "construed as proposals for addition to the contract."  N.Y. U.C.C. § 2-207(2).  If both parties are "merchants" under the UCC, those terms "become part of the contract unless," *inter alia*, "they materially alter it."  *Id.*  Terms that fall within this definition are those that may "result in surprise or hardship if incorporated without express awareness by the other party."  *Id.* § 2-207 cmt. 4.   The parties do not dispute that both Clopay and Excelsior are "merchants" for purposes of this transaction.  *See id.* § 2-104(1).

Much of the parties' conflict at summary judgment boils down to the question whether Clopay's Terms and Conditions were incorporated into the contract between the parties.  Excelsior admits that it never objected to the inclusion of those additional terms in the contract, but makes two arguments against their incorporation.

First, Excelsior argues that the Terms and Conditions were not incorporated into the contract because each invoice was delivered "only *after*" Clopay accepted the contract by "its conduct in shipping the goods."  (Dkt. No. 66 ("Excelsior Mem. in Opp.") at 8.)  This argument is unavailing, however, because the § 2-207 analysis applies both to "expressions of acceptance that form the contract" and to "written confirmations of agreements already reached."  *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 98 (2d Cir. 2002); *see also* N.Y. U.C.C. § 2-207 cmt. 2.  Thus, the Terms and Conditions contained in invoices dated on the shipment date must be considered for inclusion in the contract under § 2-207.

Second, Excelsior contends that the additional provisions contained in the Terms and Conditions "materially alter" its sales contracts with Clopay because they "materially reduce the remedies and notice opportunities afforded to Excelsior under the UCC."  (Excelsior Mem. in Opp. at 8.)  These provisions include a requirement that all claims with regard to the goods shipped would be filed "within 30 days after receipt . . . of the first shipment of goods as to which a claim is made" (Terms and Conditions ¶ 4(b)), and also impose a late charge of 1.5% per month (*Id.* ¶ 2).  It is possible that such terms could "materially alter" the contract pursuant to § 2-207(b).  *See* N.Y. U.C.C. § 2-207 cmts. 4-5.  However, the burden of proof as to whether an additional term materially alters the contract rests on the "party that opposes inclusion."  *Bayway Refining Co. v. Oxygenated Marketing & Trading*, 215 F.3d 219, 223 (2d Cir. 2000).  Thus, on summary judgment, Excelsior has the burden of coming forward with a showing that there is a genuine issue of material fact as to whether the additional provisions of Clopay's Terms and Conditions constituted a material alteration of the parties' bargain.  Excelsior has failed to present any proof on this point, and there is thus no basis on which to conclude that the additional terms materially altered the agreement.  Accordingly, the Court considers the Terms and Conditions to constitute a part of the parties' agreement.

Excelsior contends that a material issue of fact remains because of its contention that "substantially all of the material supplied by Clopay was defective."  (Excelsior Mem. in Opp. at 9.)  But Excelsior's assertions—devoid of specific facts demonstrating that particular shipments reflected on the invoices at issue in this suit were composed of defective material—will not do. Excelsior's generic allegations of defects, without specification of the purported defects' scope and nature, are insufficient to defeat Clopay's motion.  *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion.").  Moreover, even if Excelsior presented competent

evidence that Clopay's material was defective, Excelsior cannot explain how a material question of fact remains for trial given the waiver of warranties in the Terms and Conditions, and that Excelsior concededly did not make any claim or objection in the manner required by the Terms and Conditions.  (Def.'s 56.1 ¶ 81.)

Excelsior also asserts that "Clopay wrote off its account receivable from Excelsior in 2010," before the lawsuit was filed.  (Excelsior Mem. in Opp. at 10.)  Excelsior supports this with Shemesh's statement in an affidavit that Clopay "determined that it would not collect for the defective material previously shipped to Excelsior."  (Shemesh Decl. ¶ 12).  As evidence of this, Shemesh's declaration points to (1) Clopay's accounting statement, which appears to categorize the amount owed by Excelsior in a "bad debt reserve," and (2) a chain of e-mails discussing the 2010 cash-in-advance prepayments and shipments—which, according to Shemesh, constitute a written notification that "Excelsior had no remaining balance due." (Shemesh Decl. ¶ 13 & Ex. A, B.)

No reasonable juror could agree with Excelsior's interpretation.  The fact that the accounting statement puts the Excelsior balance into a "reserve" for "bad debt" by no means constitutes a forgiveness of the debt.  Nor could the 2010 e-mails, which are quite evidently a reconciliation of the 2010 cash-in-advance transactions, possibly convince a juror that Clopay intended to forgive all debts arising before the period covered by the reconciliation.

Excelsior has not shown that there is "evidence on which the jury could reasonably find" in its favor, *Liberty Lobby*, 477 U.S. at 252, on any element of Clopay's contract claim.  Thus, because the summary judgment record does not "present[] a sufficient disagreement to require

submission to a jury," *id.* at 251-52, the Court rules that Clopay is entitled to judgment on the outstanding invoices as a matter of law.[2]

### B.    Breach of Contract: Late Charges

Clopay's fifth cause of action asserted a breach of contract with respect to the 1.5% per month late charge on all invoices that were late by more than 60 days.  As the Court has concluded, Excelsior never objected to the additional provisions contained in the Terms and Conditions attached to Clopay's invoices, nor did it demonstrate that those terms materially altered the bargain.  Thus, those terms—including the term requiring the payment of 1.5% per month in late charges—are incorporated into the contract.  The Court therefore awards summary judgment on this claim to Clopay.

### C.    Counterclaims

In its answer, Excelsior asserted counterclaims for overpayment, accounts stated, and breach of warranty.  (Dkt. No. 20 ("Answer") ¶¶ 47-63.)  Clopay has moved for summary judgment on those claims as well.  (Dkt. No. 62 ("Clopay Mem. in Support") at 16-22.)

In its counterclaims for overpayment and accounts stated, Excelsior claimed that it was owed $248,048.09 by Clopay due to excess payment by Excelsior.  (Answer ¶¶ 47-56.) Excelsior has failed to oppose the motion as to these counterclaims and has pointed to no evidence in the record supporting them.  Accordingly, the Court deems the first and second counterclaims to be abandoned, *see Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 397-98 (S.D.N.Y. 2014) (citing cases), and awards summary judgment to Clopay on these claims.

---

[2] The Court need not address Clopay's second, third, and fourth claims for goods sold and delivered, accounts stated, and unjust enrichment, all of which are pleaded in the alternative to its primary claim for breach of contract.

As to Excelsior's counterclaim for breach of warranty, it is precluded by the parties' agreement.  The contract for each shipment of material, as amended by the addition of Clopay's Terms and Conditions, disclaims any warranties other than the warranty of specifications of the goods shipped.  (*See* Terms and Conditions ¶ 4(a).)  Thus, Excelsior has no recourse to any warranty other than the one specified in the Terms and Conditions.  But because Excelsior "acknowledges that its protests regarding the quality of Clopay-supplied material were not made in the manner purported to be required by Clopay's preprinted invoice Terms and Conditions" (Def.'s 56.1 ¶ 81), Excelsior's breach of warranty counterclaim fails.

### D.    Damages

Because Clopay has shown that it is entitled to summary judgment on the remainder of its contract claim, Excelsior is liable for the total amount of the 2009 and 2010 invoices.  The balance of those claims—which is uncontested—is $692,573.13.  (Def's 56.1 ¶ 85.)

As of December 5, 2013, Excelsior owed a balance of late charges totaling $858,899.46, accruing at a rate of 1.5% per month pursuant to the contract.  (Minshall Decl. ¶ 17 & Ex. 8.) The Court directs that Clopay shall submit an updated calculation of the late charges owed by Excelsior by October 1, 2014, to permit the entry of judgment in Clopay's favor.

**IV.     Conclusion**

For the foregoing reasons, it is hereby ordered that Clopay's motion for summary

judgment is GRANTED as to its claims for breach of contract and as to Excelsior's

counterclaims.

The Clerk of Court is directed to terminate the motion at docket number 56.

SO ORDERED.


Dated: September 18, 2014
       New York, New York


                                              _____
                                                    J. PAUL OETKEN
                                              United States District Judge